## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRIAN H. HERSCHFUS TRUST
U/A/D 3/29/94,

       Plaintiff,

                                          Case No. 13-CV-12129-DT

v.

                                          HONORABLE DENISE PAGE HOOD

CITIBANK, N.A. as TRUSTEE FOR THE
FDIC 2010-R1 TRUST, NATIONSTAR
MORTGAGE, LLC, FEDERAL DEPOSIT
INSURANCE CORPORATION, ORLANS
ASSOCIATES, P.C. and JACK LEW,

       Defendants.

_____/

## ORDER DENYING EX-PARTE MOTIONS FOR TEMPORARY ORDER TO STOP SHERIFF'S SALE AND FOR SHOW CAUSE HEARING

### I.     BACKGROUND

This matter is before the Court on Ex-Parte Motion and Amended Motion for Temporary Restraining Order to Stop Sheriff's Sale and For Show Cause Hearing filed May 14, 2013 by Plaintiff Brian H. Herschfus Trust ("Trust"). The Court considers the motion under Rule 65(b) of the Rules of Civil Procedure.

The Trust filed the instant Complaint on May 14, 2013 at 8:25 a.m. The Motion for Temporary Restraining Order was filed at 8:30 a.m. and amended at 9:46 a.m. The Sheriff's Sale The Trust seeks the Court to enjoin is scheduled for May 14, 2013, 10:00 a.m. (Comp., ¶ 92)

The Trust is an irrevocable trust established on March 20, 1994. (Comp., ¶ 10) This action concerns a residential home located at 17721 Alta Vista, Southfield, Michigan. (Comp., ¶ 23)

Defendant Citibank, N.A. ("Citibank") is the Trustee for the FDIC 2010-R1-Trust.  (Comp., ¶ 12)  The Trust is the owner of the property at issue.  (Comp., ¶ 24)  In 2006, Defendant Citizens First Bankcorp., Inc. ("Citizens First") agreed to consolidate individual Brian H. Herschfus's debts on various properties into a single mortgage secured by the Alta Vista property for $275,000.  (Comp., ¶ 28)  In early 2010, the parties agreed to increase bi-weekly payments from $961.42 to approximately $1,161.42 to cover alleged property tax escrow advances made by Citizens First.  (Comp., ¶ 32)

Citizens First became insolvent in June 2010 and the Office of Financial and Insurance Regulation closed Citizens First and appointed the FDIC as receiver over Citizens First.  (Comp., ¶ 33)  The FDIC retained ownership of the mortgage at issue forming a Mortgage Backed Security for the mortgage and other non-saleable distressed assets of Citizens First.  (Comp., ¶ 34)  In August 2010, the Trust received notice from Defendant Nationstar Mortgage, LLC ("Nationstar") indicating that it was the servicing agent for the mortgage and that the mortgage was in payment default.  (Comp., ¶ 37)  The mortgage was assigned by Citizens First to Citibank in April 2011.  (Comp., ¶ 38)

The Trust disputed in writing to Nationstar as to what was owed by the Trust.  (Comp., ¶ 40)  Nationstar responded that it was unaware of certain provisions of the note and/or rider to the loan, which the Trust asserts were recorded against the property.  (Comp., ¶ 41)  The Trust offered to bring the loan current by making a direct payment of monies due as long as Nationstar confirmed the amount due; instead, Nationstar offered to sell the indebtedness to Mr. Herschfus for the current fair market value.  (Comp., ¶ 42)

In March 2011, the Trust was sent a letter from an attorney claiming the mortgage was in

2

default.  (Comp., ¶ 43)  Mr. Herschfus called the attorney indicating that it was the mortgagee's obligation to take the money from the designated bank account.  (Comp., ¶ 44)  The attorney acknowledged there was a mistake and agreed to reinstate the mortgage and credit the Trust for all the late fees charged in the account.  (Comp., ¶ 45)  Notwithstanding the agreement, Nationstar failed to perform and Mr. Herschfus was forced to make mortgage payments to Naitonstar via Western Union to avoid default.  (Comp., ¶¶ 47-49)  Nationstar refused to accept the payments in June 2011 claiming that the Trust was required to pay $24,000 escrow payments for taxes and insurance, notwithstanding that taxes and insurance were less than $10,000 per year.  (Comp., ¶ 50) Nationstar offered that Mr. Herschfus to buy out the mortgage, which he claims he is ready, willing and able to do so for the purchase price of $120,000, but that Nationstar refused to do so.  (Comp., ¶ 52) Nationstar also refused to allow the Trust or Mr. Herschfus to modify the loan.  (Comp., ¶ 53)

In January 2012, Defendant Orlans Associates, P.C. ("Orlans") notified the Trust and Mr. Herschfus that foreclosure proceedings were being commenced.  (Comp., ¶ 54)  Mr. Herschfus sent letters to Orlans questioning the alleged default.  (Comp., ¶ 55)  Mr. Herschfus had numerous discussions with Nationstar regarding the resolution of these issues from February to October 2012. (Comp., ¶¶ 56-58)  In October 2012, Nationstar offered to reduce the mortgage interest to based on an alleged amount due approximate $345,000.  (Comp., ¶ 59)  Mr. Herschfus agreed to the lower interest rate, but did not agree on the balance due, indicating that the balance due was about $100,000, less than the $345,000 amount Nationstar claimed due.  (Comp., ¶ 60)

In December 2012, Orlans contacted Mr. Herschfus that the loan was in default and that Mr. Herschfus thereafter sent additional letters to Orlans disputing the basis for the default.  (Comp., ¶¶ 64-73)  Orlans scheduled a foreclosure sale to take place in February 2013, which was later

adjourned. (Comp., ¶¶ 65, 67) Notwithstanding the various communications between the Trust and Defendants, counsel for the Trust was informed that the Sheriff's Sale was going to take place on May 7, 2013, which was then postponed to May 14, 2013. (Comp., ¶¶ 75-76)

As noted above, the Trust filed the instant suit on May 14, 2013, seeking declaratory relief and damages. The Trust seeks to enjoin Defendants from conducting a foreclosure by advertisement sale of the property so that the Defendants will be required to prove the amount owing on the property and that the Trust will have fair opportunity to respond and assert its defenses. (Comp., ¶¶ 93-94)

## II.    ANALYSIS

### A.    Temporary Restraining Standard

Rule 65(b) of the Federal Rules of Civil Procedures provides the Court with authority to issue a temporary restraining order as follows:

> Rule 65(b)  Temporary Restraining Order.
>
> **(1)    *Issuing Without Notice*.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> > (A)    specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
> >
> > (B)    the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). A temporary restraining order expires 14 days after entry of the order granting the motion. Fed. R. Civ. P. 65(b)(2). Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966

Advisory Committee Note to 65(b).

As to the certification requirement set forth in Rule 65(b)(1)(B), the Trust's counsel did not certify to the court in writing any efforts made by counsel in this case to give notice to the Defendants, nor were reasons given why such notice should not be required.  It is noted that the Trusts seeks a Show Cause Hearing, but the Local Rules provide that requests for temporary restraining orders and for preliminary injunctions must be made by a separate motion and not by order to show cause.  E.D. Mich. LR 65.1.

Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice.  *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973).  Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered.  11 Wright & Miller at § 2951, at 507-08.

Regarding the irreparable injury requirement, it is well-settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages.  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate.  *Id.* at 511-512.

Generally, because a piece of real property is unique, its loss has been considered irreparable injury.  As the Seventh Circuit has noted, "[i]t is settled beyond the need for citation ... that a given piece of property is considered to be unique, and its loss is always an irreparable injury."  *United Church of the Medical Ctr. v. Medical Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir.1982); *cf. Brown*

5

*v. Artery Organ., Inc.* 654 F.Supp. 1106, 1118-19 (D.D.C.1987) (wrongful eviction constitutes irreparable harm because of relocation costs, difficulty in commuting from a new location, additional time needed, potentiality for homelessness).

Based on a review of the Trust's motion and Verified Complaint, the Court finds that the Trust may suffer irreparable harm as a result of the sale of the property if such a sale is not authorized under the law.  However, the Trust has been facing a foreclosure sale since February 2013, but yet waited until May 2013 to file the instant action.  It is noted that there is generally a redemption period following the Sherif's Sale as relief available to the Trust.  In some instances, a Sheriff's Sale may be set aside.  The Trust's allegation in the Verified Complaint that the foreclosure action is without any basis is not supported by any documentation, including a copy of the note and mortgage at issue, and any subsequent correspondences between the parties.  There are no documents to show that any agreement was breached by any of the Defendants.  There is no documentary evidence submitted that the foreclosure action is not proper or that the Sheriff's Sale is in fact scheduled for May 14, 2013, in light of the previous adjournments noted by the Trust in the Verified Complaint.

Weighing the factors noted above and reviewing the Verified Complaint and motion filed by the Trust, the Court finds that the Trust has not carried its burden that it is entitled to a temporary restraining order without notice to the Defendants under Rule 65(b).  The Court denies the Trust's Motion for Temporary Restraining Order to Stop Sheriff's Sale and for Show Cause Hearing.

## III.   **CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Ex-Parte Verified Motion and Amended Motion for

6

Temporary Restraining Order to Stop Sheriff's Sale and for Show Cause Hearing (**Doc. Nos. 3 and 5, filed May 14, 2013**) are DENIED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  May 14, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 14, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager